ROBERT B. WESTPHAL AND BETSY J. WESTPHAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Westphal v. Commissioner
Docket No. 28290-81.
United States Tax Court
T.C. Memo 1984-363; 1984 Tax Ct. Memo LEXIS 314; 48 T.C.M. (CCH) 525; T.C.M. (RIA) 84363; July 16, 1984. Robert B. Westphal, pro se. Helen T. Repsis, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $4,305.34 and $1,805.22, in petitioners' Federal income taxes for 1977 and 1978, respectively. The issues for decision are: 1. Whether collections on mortgages held by a partnership in excess of the partnership's basis in the mortgages gave rise to ordinary income or capital gain; and 2. Whether withdrawals from a corporation were dividend distributions or loans. Petitioners, husband and wife, filed joing Federal income tax returns *315 for 1977 and 1978. At the time they filed their petition in this case, they resided in Fort Smith, Arkansas. 1. Mortgage Collections
Petitioner Robert B. Westphal (hereinafter petitioner) was the general partner of a limited partnership named Peoples Mortgage Company, which was formed on March 12, 1971. Under the partnership agreement, he was entitled to a 25-percent interest in the partnership's "profits or other compensation." The partnership agreement stated that the partnership was formed to "purchase certain assets and property from Larry R. McCord, Trustee of Peoples Loan and Investment Company, debtor, and to service, maintain and liquidate said assets." The Peoples Loan and Investment Company was a savings and loan association that had gone bankrupt. For a total price of $1,180,000, the partnership acquired various assets, including stocks, stock warrants, bonds, debentures, foreclosed real estate, contracts of sale, and mortgage loans. The tax treatment of the partnership's collections on the mortgage loans is here at issue. The partnership considered the mortgages highly speculative and, accordingly, did not treat any of the collections on them as income until *316 its basis had been recovered, under the principles of Burnet v. Logan,283 U.S. 404 (1931). Respondent does not question the correctness of this treatment in this case. The partnership's bases in the mortgage notes were recovered prior to the years in issue, and collections on the loans in the amounts of $94,656 and $79,582 in 1977 and 1978, respectively, were reported as income in their entirety. The collections were treated as capital gains, however, and respondent determined that they were ordinary income. Capital gain is derived from the "sale or exchange" of a capital asset. See. 1222(1) and (3); [1]sec. 1.1222-1(a), Income Tax Regs. Respondent has not argued that the partnership's rights under the mortgages in question were not capital assets, but he contends that the payments which the partnership received under those mortgages did not arise from sales or exchanges. On that ground, he maintains that the collections were ordinary income. We agree with respondent. Wood v. Commissioner,25 T.C. 468 (1955), is on point.The taxpayer *317 in that case purchased the seller's rights under executory contracts for the sale of real estate known as "land contracts." The contracts provided for a downpayment with the balance of the purchase price of the land to be paid in installments. After the taxpayer acquired the seller's interests in the contracts, the purchasers of the land made the remaining installment payments directly to him. The issue in the Wood case was whether the taxpayer was entitled to report the excess of the amounts collected from the real estate purchasers over the prices he had paid for the contracts as capital gains. This Court held that he was not, because the taxpayer's profits, which "were realized simply by holding the contracts until maturity, meanwhile collecting the periodic payments from the purchaser of the property," did not arise from a "sale or exchange." Wood,supra at 476. We find no basis for distinguishing Wood from the present case. The mortgage notes purchased in the present case were apparently very similar to the land contracts in Wood, and the partnership, like the taxpayer in Wood, "merely collected the proceeds of assigned claims." Wood,supra at 476. *318 Accordingly, we hold that there was no "sale or exchange" of a capital asset and that petitioner may not report the income in question as capital gain. See Ehlers v. Vinal,382 F.2d 58, 62 (8th Cir. 1967); Osenbach v. Commissioner,198 F.2d 235, 236-237 (4th Cir. 1952), affg. 17 T.C. 797 (1951); see also Bittker, Federal Taxation of Income, Estates and Gifts, vol. 2 par. 52.1.4, p. 52-7 (1981). Petitioner argues that the discount at which the partnership acquired the mortgages in question was not due to a low rate of interest provided for in the instruments, but to the weakness of the underlying security. [2] Therefore, petitioner contends, the gains realized were due to the "increase in value over a period of time for a capital asset." It might as easily be argued, however, that the gains were attributable to a high discount rate applied to the mortgage notes due to the weakness of the collateral, and that petitioner's gains are economically comparable to interest income computed on the price the partnership paid for the mortgages at a rate high enough to be commensurate with their risk.Cf. United States v. Midland-Ross Corp.,381 U.S. 54, 57-59 (1965). *319 We need not resolve this question, however, because our holding that the gains did not result from a "sale or exchange" disposes of the issue. 2.Corporate Withdrawals
Petitioner and another individual named Tom J. Caldarera, Jr. (Caldarera), were equal co-owners of a corporation named C & W Enterprises, Inc. They formed the corporation in 1959 to invest in real estate. Over the years, they contributed equal amounts of cash to corporate capital whenever the corporation needed money to buy property. The corporation paid management fees to petitioner and Caldarera which they reported as income in their tax returns.They also withdrew additional amounts from the corporation which they did not report and which, respondent determined, were dividend income. Petitioner argues that these additional withdrawals were loans. He testified as follows: [E]ventually we would have to pay this back to the corporation, because we still *320 had 38 acres of land in Fort Smith on the outskirts, which we plan on developing, putting roads, and sewers, and stuff in. So eventually, we would have had to supplement the corporation again on this money that we drew out. So we never felt that it was a dividend. Petitioner and Caldarera did not give the corporation their notes for these withdrawals, nor was there any provision made for interest payments on them. The withdrawals had not been repaid as of the date of the trial in this case, which was 6 and 7 years after they were made: $750 withdrawn in 1977 and $7,000 withdrawn in 1978. The corporation's Federal corporate income tax returns indicate that it had retained earnings of $157,085 and $146,062 at the end of 1977 and 1978, respectively, and the parties have stipulated that the corporation had earnings and profits in excess of the withdrawals. It did not declare or pay a formal dividend in either year. Whether petitioner's withdrawals constituted loans or dividend distributions under section 301 is a question of fact to be determined upon consideration of all the facts and circumstances; the answer depends on the intent of the parties at the time the withdrawals *321 were made. Dean v. Commissioner,57 T.C. 32, 43 (1971); Kaplan v. Commissioner,43 T.C. 580, 595 (1965); Baird v. Commissioner,25 T.C. 387, 393-394 (1955). In the case of a closely held corporation, special scrutiny is required because of the unfettered control exercised by the limited number of shareholders. Roschuni v. Commissioner,29 T.C. 1193, 1202 (1958), affd. per curiam 271 F.2d 267 (5th Cir. 1959). While we do not question petitioner's sincerity in testifying that, at the time of the withdrawals, he and his co-owner anticipated having to replenish corporate capital at some time in the future, we do not think that this general expectation of making capital contributions in unspecified amounts at an unspecified future time, with no interest payments in the interim, is sufficient to support a characterization of the withdrawals as loans.Accordingly, we hold that the withdrawals are taxable as dividends. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Petitioner states that: There were not a lot of people standing in line to buy this package. * * * The reason all this sold at 50 cents on the dollar was because of the collateral, at that time, was not what was considered adequate. * * *↩