**WESTOVER et al. v. SMITH.**
**No. 12019.**

United States Court of Appeals
Ninth Circuit.
Feb. 21, 1949.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Homer R. Miller and S. Walter Shine, Sp. Assts. to Atty. Gen., and James M. Carter, U. S. Atty., George M. Bryant and Edward H. Mitchell, Asst. U. S. Attys., all of Los Angeles, Cal., for appellants.

Gibson, Dunn & Crutcher and Bert A. Lewis, all of Los Angeles, Cal., for appellee.

Before HEALY, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This is an appeal from a decision of the district court holding that income received by Smith, the taxpayer, in 1941 and 1943 was taxable as capital gain rather than as ordinary income, and ordering a refund to the taxpayer of certain taxes erroneously collected.

The taxpayer was owner of all the stock of Quickwork Company, a corporation engaged in the manufacture and sale of machine tools. In 1940 Quickwork Company sold all of its assets to Whiting Corporation in exchange for cash and the right to receive 10% of the gross sales price of machinery to be manufactured and sold by Whiting Corporation, pursuant to patents theretofore held by Quickwork Company. Following this transaction Quickwork Company liquidated and dissolved. The distribution in liquidation netted the taxpayer $39,204.26 in cash and the assignment of the contract under which Whiting Corporation was required to make future royalty payments.

Since the adjusted basis of the taxpayer's stock on the date of liquidation was $34,000, she paid a capital gain tax on the $5,204.26 cash profit. While the contractual right she held had a very substantial value, there was, owing to future business contingencies, no way of ascertaining its fair market value. Thus, no value was assigned to it in the liquidation distribution. When payments were made by Whiting Corporation to the taxpayer in 1941 and 1943 under the contract, such payments were treated as ordinary income and income tax payments were made accordingly. Taxpayer contends that the receipt of moneys from Whiting Corporation was an integral part of the liquidation distribution, and therefore such sums are to be treated as payments in exchange for stock under § 115(c) of the Internal Revenue Code, and taxed as a capital gain in the amount determined pursuant to § 111 of the Internal Revenue Code.[1]

Doubtless the value of the contract would be computed as a capital gain were it found to have an ascertainable market value at the time of Quickwork Company's liquidation. The taxpayer insists that the rule is the same in the present situation, where the value of the contract depends on uncertain future payments; that the transaction remains open until all payments are completed. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143, is cited. The Supreme Court of the United States, in that

---

[1] Relevant portions of the Code are as follows:

"§ 115. (c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, * * *." 26 U.S.C.A. § 115(c).

"§ 111. Determination of amount of, and recognition, of gain or loss.

"(a) Computation of gain or loss. The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

"(b) Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." 26 U.S.C.A. § 111(a, b).

case, dealt with the sale of stock for cash plus a contractual right given by the purchaser to receive unascertainable amounts payable annually based on future production of iron ore. The cash consideration was less than the taxpayer's stock investment. It was held that the amounts received under the contract were not to be taxed until the taxpayer's capital investment had been paid off. The transaction was not a closed one because, as the Supreme Court of the United States said, "As annual payments on account of extracted ore come in they can be readily apportioned first as return of capital and later as profit."

Appellant seeks to distinguish the Logan case in that it involved a direct sale and not a corporate distribution, as here. It is pointed out that § 115(c) of the Internal Revenue Code states, "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, * * *" and that in the instant case the taxable sums were not distributed in liquidation, but were paid because of the obligation of a third party. Hence, it is argued, the facts of this case do not permit the money received to be treated as a sale or exchange, which is the statutory foundation for the rule in Burnet v. Logan, supra. We do not agree.

As we have pointed out, if the contract in question had an ascertainable value, that amount would certainly be an "amount distributed in complete liquidation". The payments in this case arose directly out of the contract, which had a substantial value, and may be said to be "amounts distributed" within the purview of § 115(c), thus falling squarely within the holding in Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. Distributions under § 115(c) are treated in the same manner as sales. In any event, it is clear that the contract itself was a distribution under § 115(c). Its taxable valuation is its fair market value, according to § 111(b) of the Internal Revenue Code. Although there was no ascertainable fair market value at the time of liquidation, we find nothing in the statute requiring the market value to be measured immediately. In such a situation the only practicable and accurate method of

measuring the contract's value is through the application of money to such valuation as it is received. The alternatives are to ascribe a fictitious or speculative value to the property, which was condemned in the Logan case, or to allow it no value, as urged by appellants. Such methods result in inaccuracies and inequities. We think the proper procedure is to measure the value of the contract as payments are received.

In Commissioner v. Carter, 2 Cir., 170 F.2d 911, a case which presents a factual situation almost identical with that of the instant case, the second circuit held that payments received under circumstances similar to payments made pursuant to the contract in question here should be taxed as capital gain. We think the payments in question here should be so treated and affirm the judgment.

Judgment affirmed.